JOHN O'KANE, JR.           4280-0
MARK S. HAMILTON           7768-0

FRAME FORMBY & O'KANE
Attorneys at Law, A Law Corporation
Four Waterfront Plaza, 500 Ala Moana Blvd., Ste. 575
Honolulu, Hawaii  96813
Telephone:  (808) 545-3043, Facsimile: (808) 545-3065
E-mail: FFOMaritime@aol.com

Attorneys for Defendants
MAUI OCEAN ACTIVITIES, INC. ("MOA"),
THEODORE C. KING, BETH D. KING,
and MOA VESSEL

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JEANNETTE MILLER | ) | CIVIL NO. 04-00441 BMK |
| | ) | (Admiralty) |
| Plaintiff, | ) | |
| | ) | DEFENDANTS MAUI OCEAN |
| | ) | ACTIVITIES, INC., THEODORE C. |
| vs. | ) | KING, BETH D. KING, AND MOA |
| | ) | VESSEL'S FINAL PRETRIAL |
| | ) | STATEMENT |
| MAUI OCEAN ACTIVITIES, INC. | ) | |
| ("MOA"), THEODORE C. KING, | ) | Trial Date: October 17, 2006 |
| BETH D. KING, *In Personam* and | ) | Judge: Hon. Barry M. Kurren |
| MOA VESSEL, *In Rem*, | ) | |
| | ) | PRETRIAL CONFERENCE: |
| Defendants. | ) | September 7, 2006 |
| _____ | ) | Judge: Hon. Barry M. Kurren |

<u>DEFENDANTS MAUI OCEAN ACTIVITIES, INC., THEODORE C. KING,
BETH D. KING, AND MOA VESSEL'S FINAL PRETRIAL STATEMENT</u>

Defendants MAUI OCEAN ACTIVITIES, INC., THEODORE C. KING,

BETH D. KING, AND MOA VESSEL, ("Defendants"), by and through their

attorneys, Frame Formby & O'Kane, pursuant to Rule 16 of the Federal Rules of

Civil Procedure, Local Rule 16.6 of the Local Rules of the United States District

Court for the District of Hawaii, and the Court's Amended Rule 16 Scheduling Order,

hereby submit their final pre-trial statement.

A.    <u>PARTY</u>

This pretrial statement is filed on behalf of Defendants.

B.    <u>JURISDICTION AND VENUE</u>

Jurisdiction and venue as plead by Plaintiff JEANNETTE MILLER

("Plaintiff") for Plaintiff's Jones Act, Longshore and Harbor Workers' Compensation

Act, and unseaworthiness claims are not contested by Defendants.  Jurisdiction as

plead by Plaintiff for her claim that she qualifies as a maritime employee under

general maritime law is contested.

C.    <u>SUBSTANCE OF ACTION</u>

Plaintiff was hired by Defendant MAUI OCEAN ACTIVITIES, INC.

("MOA") to be a "Beach Booth Attendant" for MOA's Kailua-Kona jet ski business.

Beach Booth Attendants are hired to sell tickets on shore and retail items. Specifically, Plaintiff's duties were to greet customers as they arrived at the pier for jet ski times reserved by telephone, to sell jet ski rides to walk up customers, to show an instructional/safety video to customers and have them sign a waiver of liability. MOA's beach booth was located on the bed of a pickup truck which was driven to the Kona pier every morning for business.

On August 27, 2004, the day of the incident, Captain Doug Rideout arrived at the pier and discovered the person assigned to help launch the shuttle vessel and jet skis was absent due to illness. He called another employee for assistance but while waiting for that person, Plaintiff arrived. Although Plaintiff had never helped launch the shuttle vessel or the jet skis, because no one else was available, Captain Rideout asked Plaintiff for assistance. Captain Rideout handed Plaintiff the bow line of the vessel so she could walk the vessel off the trailer after it was lowered into the water. Captain Rideout warned her to be careful because the ramp was slippery, but as he turned to walk back to the truck, Plaintiff slipped and fell. Plaintiff's fall occurred on the State-owned access ramp, not the vessel.

D.    UNDISPUTED FACTS

1. The residency of the parties.

2. Plaintiff was hired by and worked as MOA's employee at its Kailua-

Kona jet ski operation.

3. Plaintiff's fall occurred on the State-owned access ramp, not the vessel.

E.    DISPUTED FACTUAL ISSUES

All other factual issues are in dispute, including, but not limited to:

1. Whether Plaintiff's alleged injuries were caused or contributed to, in any manner, by her own negligence;

2. Whether the danger and/or risk of injury associated with the use of the ramp, if any, was open and obvious to Plaintiff;

3. If Plaintiff sustained damages as alleged, whether she failed to mitigate her damages;

4. Whether Plaintiff qualified as seaman under the Jones Act or as a maritime worker under general maritime law;

5. Whether Plaintiff qualified as a longshoreman for LHWCA coverage;

6. Whether Plaintiff was entitled to a warranty of seaworthiness;

7. Whether the vessel was unseaworthy; and

8. Whether Plaintiff has failed to join an indispensable party because Defendants are not responsible for maintaining the Kailua-Kona access ramp.

F.    RELIEF PRAYED

     Plaintiffs' last settlement offer was for $75,000.00.

G.    POINTS OF LAW

     Defendants rely on the following points of law:

1.    Plaintiff Was Not a Longshoreman

     Plaintiff alleges she qualifies as a longshoreman under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). The LHWCA, 33 U.S.C. §§ 901 *et seq.*, provides a remedy for land-based maritime workers who are injured during their employment. *See* P. C. Pfeiffer Co. v. Ford, 444 U.S. 69, 62 L. Ed. 2d 225, 100 S. Ct. 328 (1979). To qualify for coverage, a land-based maritime worker must satisfy certain requirements. First, situs: "an employee may recover for personal injury only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." Tarver v. Bo-Mac Contrs., Inc., 384 F.3d 180, 181, 2004 AMC 2796 (5th Cir. 2004) (citing  33 U.S.C. § 903(a)). Second, status: the employee must be engaged in activities essential to "loading, unloading, repairing, dismantling, or building a vessel." *See* SeaLand Service, Inc. v Rock, 953 F.2d 56, 1992 AMC 1191 (3rd Cir. 1992). Thus, a claimant must satisfy both a situs and a status requirement to qualify

for LHWCA coverage.  <u>Boomtown Belle Casino v. Bazor</u>, 313 F.3d 300, 302, 2003

AMC 15 (5th Cir. 2002) (citing <u>Director v. Perini N. River Assocs.</u>, 459 U.S. 297,

314, 74 L. Ed. 2d 465, 103 S. Ct. 634 (1983)).

Notably, the LHWCA explicitly excludes from coverage workers

covered under other federal acts and those engaged in activities that do not involve

the "loading, unloading, repairing, dismantling, or building a vessel." *See* 33 U.S.C.

§§ 902 (2005).  As defined by 33 U.S.C. § 902 (3):

> (3) The term "employee" means any person engaged in maritime
> employment, including any longshoreman or other person engaged in
> longshoring operations, and any harbor-worker including a ship
> repairman, shipbuilder, and ship-breaker, but such term does not
> include–
>
> > (A) individuals employed exclusively to perform office
> > **clerical**, secretarial, security, or data processing work;
> > (B) individuals employed by a club, camp, **recreational**
> > **operation**, restaurant, museum, or retail outlet;
> > . . .
> >
> > (G) a master or member of a crew of any vessel; or
> > (H) any person engaged by a master to load or unload or
> > repair any **small vessel under eighteen tons net**;
>
> if individuals described in clauses (A) through (F) are subject to
> coverage under a State workers' compensation law.

33 U.S.C. §§ 902 (3) (emphasis added).  Under 33 U.S.C. § 902(3), to determine

whether a claimant is covered, "the inquiry centers on the claimant's assignable duties

at the time of the injury[.]"  <u>Boomtown Belle</u>, 313 F.3d at 303 (citing <u>Huff v. Mike</u>

Fink Restaurant, Benson's Inc., 33 B.R.B. 179, 185 (1999)); *see generally* Northeast

Marine Terminal Co. v. Caputo, 432 U.S. 249, 269-74, 53 L. Ed. 2d 320, 97 S. Ct.

2348 (1977).

A. Recreational Exception

In Boomtown Belle, the claimant was chief engineer for the land-based

operations of a "riverboat" casino, but his duties included general maintenance on

board the casino. Boomtown Belle, 313 F.3d at 301-02. During the course of

preparing for the start of business, the claimant had a stroke and died. Id. at 302. To

determine the claimant's eligibility for benefits, the court examined the requirements

of the LHWCA, in particular, 33 U.S.C. §§ 902 (3). The court held that the "floating

casino" was a "recreational operation" and the claimant was the employee of a

recreational operation, and thus, was not covered under the LHWCA "even if some

of his duties expose[d] him to the hazards associated with maritime commerce." Id.

at 304; *see also* Green v Vermilion Corp., 144 F.3d 332, 1998 AMC 2328 (5th Cir.

1998) , cert. denied, 526 U.S. 1017, 143 L. Ed. 2d 349, 119 S. Ct. 1251 (1999)

(finding an employee who served as cook, watchman, and general repairman at a

camp for a maritime employer fell within the "club/camp" exclusion from LHWCA

coverage since he performed all his duties at the camp).

Several courts have noted that jet skis are primarily recreational vessels.

*See, e.g.,* Ghotra by Ghotra v. Bandila Shipping, 113 F.3d 1050, 1059, 1997 AMC

1936 (9th Cir. 1997) (distinguishing between a marine surveyor hired by a shipping company to inspect cargo holds and killed while performing these duties and a child on vacation killed while riding a rented recreational jet ski); Buckley v. City of Redding, 66 F.3d 188 (9th Cir. 1995) (finding an ordinance violated a federal act by restricting recreational watercraft, including jet skis, from a waterway that led to a facility built with funds provided under the act); Tucker v. Fearn, 333 F.3d 1216, 1224, 2003 AMC 1705 (11th Cir. 2003) (noting that Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199; 116 S. Ct. 619; 133 L. Ed. 2d 578 (1996) involved a recreational jet ski accident)); Dinsmore Instrument Co. v. Bombardier, Inc., 199 F.3d 318, 319 (6th Cir. 1999) (defining jet skis as "recreational water vehicles"); Szollosy v. Hyatt Corp., 208 F. Supp. 2d 205, 208. 2002 AMC 1432 (D. Conn. 2002) (defining jet skis as "recreational").

Plaintiff was hired as a "Beach Booth Attendant" for MOA's Kailua-Kona jet ski business to sell customers vouchers to ride MOA's jet skis for pleasure. MOA's customers did not rent the jet skis to ride to work, to carry cargo, or for any business-related purpose. They rented them solely for recreational purposes. Clearly, MOA's jet ski business is a recreational operation. Plaintiff worked for a recreational operation, and according to 33 U.S.C. § 902(3)(B), she is statutorily excluded from LHWCA coverage.

B.  Clerical Exception

As noted above, Plaintiff was hired by MOA as a "Beach Booth Attendant." Her duties included greeting customers as they arrived at the pier, selling jet ski rides to walk up customers, showing an instructional/safety video and having customers sign a waiver of liability. Plaintiff was a clerical worker who spent the vast majority of her working time handling administrative matters.

Under 33 U.S.C. § 902(3)(A), "individuals employed exclusively to perform office clerical, secretarial, security, or data processing work" are excluded from coverage. *See* 33 U.S.C. § 902(3)(A). Even if the Plaintiff occasionally helped passengers board or disembark, she was hired as a clerical worker. *See* <u>Maher Terminals, Inc. v Farrell</u>, 548 F.2d 476 (3rd Cir. 1977) (holding that a clerk in maritime terminal office whose principal duties required him to examine documents presented by outside truckers was excluded from LHWCA coverage, notwithstanding that on occasion he left the office to examine markings on cargo and that in the past he had worked as checker); <u>Stone v Ingalls Shipbuilding, Inc., et al.,</u> 30 B.R.B. 209 (1996) (holding the claimant, who was hired as a joiner-helper at a shipyard, was a clerical employee and was excluded from LHWCA coverage under 33 U.S.C.. § 902(3)(A) because the overwhelming majority of the claimant's work was performed in an office). In this case, the office was MOA's beach booth located on the bed of a Ford F150 pickup truck. Plaintiff was responsible for monitoring the company

phone kept in the truck and her assigned duties and responsibilities limited her to acting as a customer sales representative. Thus, under 33 U.S.C. § 902(3)(A), Plaintiff's employment was clerical in nature and she is not entitled to coverage under the LHWCA.

C.  MOA Vessel Exception

To the extent Plaintiff claims that she assisted loading and unloading passengers on the MOA vessel, it should be noted that the MOA vessel is a small, six-passenger vessel, fourteen (14) feet in length, and well under 18 tons. Under 33 U.S.C. § 902(3)(H), "any person engaged by a master to load or unload or repair any small vessel under eighteen tons net" is excluded from coverage. *See generally* Southwest Marine, Inc. V. Byron Gizoni, 502 U.S. 81, 89 n.4, 112 S. Ct. 486, 116 L. Ed. 2d 405, 1992 AMC 305 (1991) (noting 33 U.S.C. § 902(3)(H) clearly excluded persons engaged to repair small vessels under 18 tons net).

In summary regarding her LHWCA claim, Plaintiff was a clerical employee of a recreational operation and the only vessel she allegedly helped passengers board was under 18 tons net. Consequently, for the three reasons discussed above, Plaintiff is statutorily excluded from coverage under § 902(3). She is not a land-based maritime worker, she is a land-based worker covered under the State of Hawaii worker's compensation system.

2.  <u>Plaintiff Was Not a Seaman</u>

In addition to claiming longshore status, Plaintiff also claims mutually exclusive seaman status.  To attain seaman status two requirements must be met: (1) an employee's duties must contribute to the function of the vessel or to the accomplishment of the vessel's mission; and (2) the seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.  <u>Chandris, Inc. v. Latsis</u>, 515 U.S. 347, 376 (1995).  The second prong of the <u>Chandris</u> test is the best indicator of seaman status.   This prong was intended by the Supreme Court to separate land-based workers from sea-based workers, the former of which  have "only a transitory or sporadic connection to a vessel in navigation" and are not regularly exposed "to the perils of the sea."  <u>Id.</u> at 368.  "[T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time."  <u>Id.</u> at 370.

The Supreme Court's decision in <u>Chandris</u> was based on two policy judgments:

> First, there should be a clear distinction between land-based and sea-based maritime workers.  Land-based workers are to be covered under the Longshore Act; this was the essential distinction drawn by Congress.  "The latter (sea-based workers), who owe their allegiance to a vessel and not solely to a land-based employer, are seamen."

11

> Second, seaman status is not a function of *where* the
> worker was injured or *what* he was doing at the time,
> but turns on "the nature of the seaman's service, his
> status as a member of vessel, and his relationship as
> such to the vessel and its operation in navigable
> waters."

Schoenbaum, Admiralty and Maritime Law, Fourth Edition, (2004), p. 223, (citations

omitted). Accordingly, "the total circumstances of an individual's employment must

be weighed to determine whether he had a sufficient relation to the navigation of

vessels and the perils attendant thereon." Chandris, 515 U.S. at 370, (quoting Wallace

v. Oceaneering Int'l, 727 F.2d 427, 432 (5th Cir. 1984)). Jones Act remedies are

reserved for sea-based maritime employees whose work regularly exposes them to

"the special hazards and disadvantages to which they who go down to sea in ships are

subjected." Chandris, 515 U.S. at 370 (quoting Seas Shipping Co. v. Sieracki, 328

U.S. 85, at 104 (1946), Stone, C.J., dissenting). It is reserved for "a member of the

crew," not for a land-based workers like Plaintiff who just happens to be injured on

a pier while helping to launch a vessel on a one-time basis. Id. at 369.

### A.    Plaintiff's Connection to the Vessel Was Not Substantial Under Chandris

Plaintiff's assigned duties and responsibilities as MOA's Beach Booth

Attendant arguably contributed to the mission of MOA vessels (the lenient first prong

of Chandris). Consequently, we must look to the second requirement of Chandris and

consider whether Plaintiff had a connection to a vessel in navigation that was

substantial in terms of duration and nature.  The Supreme Court has noted that:

> [f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

Cabral v. Healy Tibbitts Builders, Inc., 118 F.3d 1363, amended 128 F.3d 1289, 1293 (9th Cir. 1997) (citing Harbor Tug & Barge Co. v. Papai, 137 L. Ed. 2d 800, 117 S. Ct. 1535, 1540 (1997)).  In both Papai and Chandris, the Court emphasized the purpose of the substantial connection test is to separate land-based workers who do not face the perils of the sea from sea-based workers whose duties necessarily require them to face those risks.  *See* Papai, 117 S. Ct. at 1540; Chandris, 115 S. Ct. at 2190.

In Cabral, Senior Judge Samuel King held and the Ninth Circuit Court of Appeals affirmed that Cabral was not a seaman because he did not have a substantial connection to a vessel in navigation in terms of the nature of the work he performed.  Although Cabral operated a crane on a barge on the navigable waters of Pearl Harbor, Cabral was hired and worked 90% of his employment time as a crane operator, not as a crew member, consequently, he did not have allegiance to the barge. The same can be said for this case, Plaintiff lacks the requisite legal connection to the MOA vessel.  She may have been on the MOA vessel on occasion, but she was not there in the nature of a crew member.  Her allegiance was to the "beach booth" truck

parked on the pier.

In <u>Chandris</u>, the Court stated "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." <u>Id</u>. at 371 (citation omitted). The Court noted, however, that "[t]his figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases." <u>Id</u>. During her deposition, Plaintiff testified she spent 60% of her time on the pier and the rest either on the platform or on the MOA vessel going to and from the pier and the platform. According to Plaintiff, the trip out to the platform took approximately two (2) minutes. A review of the records for jet ski rentals for the period of Plaintiff's employment show that even if only one passenger was taken to or from the platform per trip (in other words, no multi-passenger trips), which was not the procedure used, Plaintiff still could not have spent as many hours on the vessel as she claims. In addition, as for her time on the platform, according to Plaintiff's testimony, she was principally taking dips in the water and riding the jet skis for fun, clearly not crew member conduct showing allegiance to a vessel.[1]

---

[1]    The United States Supreme Court recently held that "[under [1 U.S.C. ]§ 3, a "vessel" is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." <u>Stewart v. Dutra Constr. Co.</u>, 543 U.S. 481, 125 S. Ct. 1118, 1129, 160 L. Ed. 2d 932 (2005). The Supreme Court noted that "a watercraft is not "capable of being used" for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement." <u>Stewart</u>, 125 S. Ct. at 1127. The Court also stated that "[t]he question remains in all cases

Discovery to date has clearly established Plaintiff was not hired as a crew member, was not trained as a crew member and was not called upon by any of the captains to act as a crew member on the MOA vessel. The MOA vessel is only capable of carrying six passengers at one time and the only crew required is a captain. There is no room or need for additional crewmembers. Plaintiff was a land-based Beach Booth attendant who, on a limited number of occasions over an eight (8) day employment period when business was slow, just happened to ride the MOA vessel out to the platform to swim and/or ride jet skis for fun. For Plaintiff to argue this limited interaction with MOA vessels somehow entitles her to seaman status is an insult to all those seamen who truly ply the seas, function as working members of the crew and subject themselves to the hazards and perils of the sea. In essence, Plaintiff's interaction with MOA vessels "was the sort of 'transitory or sporadic'

---

whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one." Id. at 1128.

It is doubtful whether the platform from which Plaintiff recreated is a vessel in light of the holding in Stewart. The platform is permanently moored and has not moved for several years. It is practically incapable of transportation. See Gross v. Tonomo Marine, Inc., 2005 U.S. Dist. LEXIS 24323, 2005 A.M.C. 1909 (W.D. Pa. 2005) (citing Stewart, 125 S. Ct. at 1126-27 and holding that watercraft permanently affixed to shore or resting on the ocean floor are "not practically capable of being used as a means of transportation" and are therefore outside the broad sweep of § 3); Arnold v. Luedtke Eng'g, Co., 357 F. Supp. 2d 1019, 1024 n.1 (W.D. Mich. 2005) (holding that even under the definition of "vessel" set forth in Stewart, a work raft would not be considered a vessel for Jones Act purposes because it was not "practically capable" of transporting anything).

In this case, the platform does not transport cargo, equipment or personnel. It was not designed for navigational or transportation purposes. It does not perform its work by transporting cargo, equipment or personnel, and more importantly, it is not practically capable of transporting cargo, equipment or personnel. Rather, the platform in this case is a fixed deck upon which paying customers transition from the MOA vessel to jet skis (vessels).

connection to a vessel or group of vessels that . . . . does not qualify one for seaman status." Papai, 117 S. Ct. at 1542 (quoting Chandris, 115 S. Ct. at 2190).

>    B.    The Plaintiff Was Not a Member of the MOA Vessel's Crew
>          and Is Not Entitled to a Warranty of Seaworthiness

Plaintiff has also alleged the MOA vessel was unseaworthy. Plaintiff was not hired as a member of the MOA vessel's crew and did not function as a working member of the vessel's crew. Her presence on the vessel was incidental to her duties as Beach Booth attendant. The only assigned and functioning crew members on board the six-passenger MOA vessel at any given time were the captains.

Clearly, whenever Plaintiff was aboard a MOA vessel, she was there as a passenger, invitee or guest, not as a crewmember. Passengers, invitees, or guests are not entitled to a warranty of seaworthiness. Kermarec v. Companie Fenerale Transatlantique, 358 U.S. 625, 625, 1959 AMC 597 (1959); Fisherman's Wharf Fillet, Inc. Limitation Proceedings, 83 F. Supp.2d 651, 2000 AMC 1331 (E.D. Va. 1999); Craig v. M/V Peacock, 760 F.2d 953, 956 (9th Cir. 1985). In this case, however, Plaintiff was not even physically on the MOA vessel when she sustained injury. She was on the State of Hawaii pier. In reality, Plaintiff's unseaworthiness claim is linked to her alleged Jones Act claim and for the same reasons her Jones Act claim is untenable (she is not a seaman/crew member), so is her unseaworthiness claim.

As an aside, the MOA was seaworthy at the time of Plaintiff's fall on the pier. To be considered seaworthy, a vessel, its crew, appurtenances and operation must be reasonably fit for the vessel's intended purposes. Unser v. Luckenbach Overseas Corp., 400 U.S. 494, 1971 AMC 277 (1971). The MOA vessel was being launched by a licensed captain with the required training and experience. Its equipment was proper for that type of vessel and secured in positions designed with the safety of its passengers in mind. The vessel had equipment on board to protect passengers in the event of an emergency. There is no evidence of unseaworthiness in this case.

   3. Plaintiff Failed to Join An Indispensable Party

Both parties agree Plaintiff was injured on an access ramp owned and maintained by the State of Hawaii (the "State"). Plaintiff has sued the State in state court alleging the condition of the ramp was a substantial factor in causing Plaintiff's alleged injuries. Clearly, Plaintiff believes the State's negligence affects her rights and remedies, and that "complete relief cannot be accorded among those already parties" to Civil No. 04-00441 BMK in the U.S. District Court. See Fed. R. Civ. P. 19.

Equally important, the absence of the State in this case, leaves Defendants subject to a substantial risk of incurring inconsistent obligations. Contributory negligence on the part of the State would reduce Defendants' share of

17

damages, if any, by an amount proportionate to the State's percentage of fault.  Thus,

a judgment in federal court without the presence of the State may expose Defendants

to liability far greater than their reasonable percentage of fault, if any.[2]  In addition,

should the State file a third-party claim against Defendants in the state court

proceedings or demand Defendants defend and indemnify it pursuant to State

regulations for use of the access ramp, Defendants may suffer multiple obligations.

Moreover, the State has an interest in the proceeding in federal court because issues

decided in its absence could affect its defense in state court.  For example, a decision

in federal court absolving Defendants of any negligence in the matter could preclude

the State from asserting Defendants' negligence was a substantial factor in causing

the incident.  Clearly, if possible, the State should be joined as a party in the interest

of just adjudication.  If joinder is not possible, this case should be dismissed.

A.    Procedural Authority and Precedent

Federal Rules of Civil Procedure, Rule 19 provides, in relevant part, the

---

[2]    In an unanimous decision, the United States Supreme Court held that in admiralty tort actions against multiple defendants where the plaintiff has settled with some defendants in advance of trial, the liability of non-settling defendants is calculated with reference to the trier of fact's allocation of proportionate responsibility.  McDermott, Inc. v. AmClyde, 511 U.S. 202, 217, 114 S. Ct. 1461; 128 L. Ed. 2d 148 (1994); see also United States v. Reliable Transfer, 421 U.S. 397, 44 L. Ed. 2d 251, 95 S. Ct. 1708 (1975) (holding damages should be assessed on the basis of proportionate fault when such an allocation can reasonably be made).  In other words, under admiralty law, the proportionate share approach makes each party responsible for precisely its share of the damages.  AmClyde, 511 U.S. at 210.  Accordingly, in order for the trier of fact in this case to make an accurate determination as to the appropriate proportion of liability among the parties, each party must be represented and allowed to present its case.  Because the State will not be represented at trial, its proportionate share of liability cannot be reasonably determined.

following:

> (a) Persons to be joined if feasible.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .

> (b) Determination by court whenever joinder not feasible.  If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19.  Failure to join an indispensable party can be raised at any time, it may raised either by motion to dismiss, by motion for judgment on the pleadings, or for the first time at trial.  *See* Fed. R. Civ. P 12 (h)(2) & 21; Pickel v. International Oilfield Divers, Inc., 791 F.2d 1237, 1242 (5th Cir. 1986); Alliance General Ins. Co. v. Louisiana Sheriff's Automobile Risk Prog., 1997 U.S. Dist LEXIS 12365 (E.D. La. 1997); *see also* Great-West Life & Annuity Ins. Co. v. Woldemicael, 2006 U.S. Dist. LEXIS 36420 (W.D. Wash. 2006).  A court may raise failure to join an indispensable party *sua sponte,* even on appeal.  Woldemicael, 2006 U.S. Dist. LEXIS at 36420; CP Nat'l Corp. v. Bonneville Power Admin., 928 F.2d 905, 911-12 (9th Cir. 1991). If the

party to be joined is indispensable but cannot be joined, the lawsuit should be dismissed. <u>Dawavendewa v. Salt River Proj. Agric. Improvement & Power Dist.</u>, 276 F.3d 1150, 1163 (9th Cir. 2002). Dismissal for failure to join an indispensable party is without prejudice, however, because it is not an adjudication on the merits and does not bar refilling of the action wherever the missing party is subject to jurisdiction. *See* Fed. R. Civ. P. 41 (b); <u>County Sanitation Dist. No. 2 v. Inland Container</u> 803 F.2d 1074, 1077-78 (9th Cir. 1986).

     B.   <u>Rule 19 Jurisprudence</u>

       Rule 19 requires a court to "determine: (1) whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in 'equity and good conscience' the suit should be dismissed." <u>Dawavendewa</u>, 276 F.3d at 1155 (citations omitted). In determining whether a party is necessary, a court must decide, if in the absence of the party, complete relief can be afforded the plaintiff. <u>Id.</u> In this case, Plaintiff obviously believes she cannot get complete relief in her federal suit, otherwise she would not have filed against the State in state court. Indeed, if the State is negligent as alleged, in its absence, complete relief cannot be afforded Plaintiff in Civil No. 04-00441 BMK for reasons discussed below.

       In determining whether a party is necessary, a court may also consider whether the missing party can claim "a legally protected interest such that a decision

in its absence will (1) impair or imped its ability to protect that interest; or (2) expose [those already made parties to the suit] to the risk of multiple or inconsistent obligations by reason of that interest." Id.; see Fed. R. Civ. P. 19 (a)(2). As noted above, Plaintiff has filed a complaint against the State in state court based upon the "same nucleus of operative facts." Although the state court action is currently stayed, should the federal action go forward, a decision in federal court assigning a percentage or absolving the Defendants of negligence could "impair or impede" the State's ability to protect its interests because the state court could find the doctrine of collateral estoppel prohibits the State from re-litigating the issue of Defendants' alleged negligence. See Aguilar v. Los Angeles County, 751 F.2d 1089, 1094 (9th Cir. 1985); Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 821 (9th Cir. 1985) (noting that a district court "need not conclusively determine how collateral estoppel would operate in future litigation" and that "Rule 19 speaks to possible harm, not only to future harm"). Clearly, the State has a legally protected interest.

Additionally, as noted, absent the State, a decision could expose Defendants to the risk of multiple or inconsistent obligations. The State can file a third-party claim against Defendants in the state court proceedings or demand Defendants defend and indemnify it pursuant to the State's regulations governing Defendants' permit to use the access ramp. If the State files a third-party claim and the state court decides collateral estoppel does not apply, Defendants could find

themselves subject to a state court judgment assigning them a higher or lower percentage of negligence or could be held not liable irrespective of the decision in federal court. More importantly, the State's absence in the federal action precludes a finding of the State's contributory negligence, if any. Thus, a federal court decision could unfairly prejudice Defendants by making them indirectly liable for the State's acts and/or omissions. Under either Fed. R. Civ. P. 19 (a)(2) (i) or (ii), the State is a necessary party.

Rule 19 also requires a determination as to whether the missing party can feasibly be joined. Similar to the Navajo Nation in Dawavendewa, the State enjoys a federally recognized right of sovereign immunity. *See* Dawavendewa, 276 F.3d at 1159; Alden v. Maine, 527 U.S. 706, 713, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55-56, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); U.S. Const. amend. XI. Accordingly, the State can assert or waive its immunity in federal court. The State has, however, already waived its immunity for the state court action. *See* Hawaii Revised Statutes § 662-2; Miller v. State of Hawaii, Civil No. 05-1-0149K. Consequently, it is doubtful the State will waive its immunity for the federal action as well. The State cannot be joined.

Finally, Rule 19 requires a court to consider whether the missing party is indispensable such that the action should be dismissed. To make this determination, a court must balance four factors: (1) the prejudice to any party or to

the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum.  <u>Dawavendewa</u>, 276 F.3d at 1161-62 (citation omitted); Fed. R. Civ. P. 19 (b).  The following indicates this action should be dismissed:

      i)    <u>Prejudice to Any Party or to the Absent Party</u>

Both parties agree the accident happened on State property.  Plaintiff has alleged both Defendants and the State were negligent but has chosen to pursue a remedy against Defendants and the State in different forums.  Although Plaintiff has the right to pursue a remedy in the forum of her choice, Plaintiff cannot artfully pursue remedies in separate forums when by doing so she makes a reasonable determination of the parties' relative degree of fault impossible.  In the federal action, the State's absence makes it impossible to assess the percentage or degree of the State's negligence, if any, and any decision without a determination of the contributory negligence of the State prejudices Defendants.  In addition, a decision in federal court could "fix" Defendants' percentage of liability and bind the State without the State having had an opportunity to affect that determination.  Thus, the State would be prejudiced.  Finally, although the state and federal courts' decisions will be based on the same nucleus of operative facts, even a determination of Plaintiff's percentage of negligence is impossible given the separate decisions

determining the negligence of the parties must be made without regard for the alleged

negligence of allegedly responsible entities not a party to the suit. The only way to

resolve this dilemma is dismiss the case. Plaintiff can then add Defendants as a party

in the state court action.

      ii)      <u>Whether Relief Can Be Shaped to Lessen Prejudice</u>

No relief mitigates the prejudice. Unless Defendants and the State are

parties to the same suit, these problems will prevent a just adjudication on the issues.

      iii)      <u>Whether an Adequate Remedy, Even If Not Complete, Can Be Awarded Without the Absent Party</u>

No partial relief is adequate. Without the State as party, the problems

discussed above cannot be addressed.

      iv)      <u>Whether There Exists an Alternative Forum</u>

An alternative forum exists. Plaintiff has already filed suit in state court

against the State. It would be relatively easy to add Defendants as a party and

proceed in state court.

Clearly, given Plaintiff's allegations of State negligence, the State is a

necessary party to any lawsuit pertaining to the accident. Plaintiff anticipated

problems filing against the State in federal court, knew she could not get complete

relief without the State, and consequently, filed suit against the State in state court.

The arguments for determining whether the State is a necessary and indispensable

24

party clearly weigh in favor of finding the State necessary and indispensable. Plaintiff will not be prejudiced by dismissing the case in federal court and joining Defendants in the state action.  Therefore, the case against Defendants should be dismissed.

    4.  <u>Comparative Negligence and Proximate Cause</u>

        Under admiralty law, a rule of comparative negligence has long been applied in personal injury actions.  <u>United States v. Reliable Transfer Co.</u>, 421 U.S. 397, 407, 44 L. Ed. 2d 251, 95 S. Ct. 1708, 1714 (1975); *see* <u>Pope & Talbot, Inc. v. Hawn</u>, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed 143 (1953); <u>Simeonoff v. Hiner</u>, 249 F.3d 883, 888 (9th Cir. 2001).  Defendants' negligence, if any, was not a substantial factor in causing Plaintiff's alleged injuries, but even if Defendants' were negligent and their negligence a substantial factor in causing Plaintiff's alleged injuries, contributory negligence on the part of the Plaintiff reduces the total damages awarded by an amount proportionate to Plaintiff's percentage of fault.

        Moreover, a party whose fault was not the proximate cause of the complaining party's injuries is not liable at all for the complaining party's damages.  <u>Exxon Co., U.S.A. v. Sofec, Inc.</u>, 517 U.S. 830, 842, 116 S. Ct. 1813, 135 L. Ed. 2d 113 (1996).  Defendants were not negligent, but even if they were, their acts and/or omissions were not the proximate cause of Plaintiff's injuries,

therefore, they are not liable for any of the Plaintiff's damages.

    5.  <u>Additional Points of Law Will Be Briefed in Defendants' Trial Brief</u>.

H.    <u>PREVIOUS MOTIONS</u>

    A motion to continue was filed in this case and later withdrawn.

I.    <u>WITNESSES TO BE CALLED</u>

    Defendants intend to call the following witnesses, either live or by deposition:

    1. Ted King - Mr. King will testify regarding liability and damages.

    2. Jesse Kunewa - Mr. Kunewa will testify regarding liability.

    3. Doug Rideout - Mr. Rideout will testify regarding liability.

    4. Jeff Watson - Mr. Watson will testify regarding liability.

    5. Pat Shand - Mr. Shand will testify regarding liability.

    6. Defendants reserve the right to call the witnesses listed by Plaintiff, as well as rebuttal and/or impeachment witnesses.

J.    <u>EXHIBITS</u>

    Defendants intend to introduce the following exhibits at trial:

    1. Any and all medical records of the Plaintiff.

    2. Any and all answers to interrogatories in this litigation.

    3. Any and all documents produced pursuant to mandatory initial disclosure, requests for production of documents and/or requests for answers to

interrogatories.

4. Any and all documents subpoenaed in this litigation.

5. Plaintiff's and witnesses' depositions.

6. DVD taken by a witness depicting the scene of the alleged incident.

7. Defendants reserve the right to introduce any and all exhibits listed by any other party to this litigation.

K.    FURTHER DISCOVERY OR MOTIONS

The discovery cut-off has passed.  It has been mutually agreed between the parties that discovery will be extended for the purposes of taking depositions.  Depositions of various witnesses will be taken before trial to preserve their testimony.  A motion for leave to file a motion to dismiss will be filed because of Plaintiff's failure to join an indispensable party, the State of Hawaii.

L.    STIPULATIONS

A stipulation to dismiss without prejudice was proposed by Defendants because of the failure of the Plaintiff to add the State of Hawaii as an indispensable party.  The proposed stipulation was rejected.

M.    AMENDMENTS & DISMISSALS

No amendments are contemplated at this time.  Dismissal for failure to join an indispensable party is contemplated as discussed above.

N.    <u>SETTLEMENT DISCUSSIONS</u>

Settlement conferences were held on July 31, 2006 and August 14, 2006  The settlement conferences were unsuccessful in resolving this matter.

O.    <u>AGREED STATEMENT</u>

An agreed statement does not appear feasible at this time.

P.    <u>BIFURCATION</u>

Bifurcation does not appear feasible in this case.

Q.    <u>REFERENCE TO MASTER OR MAGISTRATE</u>

This case has been referred to a magistrate.

R.    <u>APPOINTMENT OR LIMITATION OF EXPERTS</u>

Appointment of experts does not appear feasible in this case.

S.    <u>TRIAL</u>

The non-jury trial is scheduled for October 17, 2006 before Judge Barry M. Kurren.

T.    <u>ESTIMATE OF TRIAL TIME</u>

Defendants believe their case will take one day.

U.    <u>CLAIMS OF PRIVILEGE OR WORK-PRODUCT</u>

No issues in this area have arisen requiring the Court's involvement.

V.    <u>MISCELLANEOUS</u>

There do not appear to be any other issues at this time.

DATED: Honolulu, Hawaii; August 31, 2006.

FRAME FORMBY & O'KANE

/s/ MARK S. HAMILTON

_____

JOHN O'KANE, JR.
MARK S. HAMILTON
Attorneys for Defendants
MAUI OCEAN ACTIVITIES, INC.,
THEODORE C. KING,
BETH D. KING, and MOA VESSEL

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing

document was hand-delivered to the following parties at the address given below

on this 31st day of August, 2006:

> PATRICK F. McTERNAN, ESQ.
> HOWARD G. McPHERSON, ESQ.
> 600 Davies Pacific Center
> 841 Bishop Street
> Honolulu, Hawaii 96813
>
> Attorneys for Plaintiff
> JEANNETTE MILLER
>
> DATED: Honolulu, Hawaii; August 31, 2006.

FRAME FORMBY & O'KANE

/s/ MARK S. HAMILTON

_____

JOHN O'KANE, JR.
MARK S. HAMILTON
Attorneys for Defendants
MAUI OCEAN ACTIVITIES, INC.,
THEODORE C. KING, BETH D.
KING, and MOA VESSEL